UNITED STATES DISTRICT COURT **CV 04 338**
EASTERN DISTRICT OF NEW YORK

---

EFTHIMIOUS, ACHILLES

    Petitioner

    against

John Aschcroft,ETAL.,

    Respondents

---

BLOCK, J.

POHORETSKY M.

Civil Action No.

Agency File No. A34 298 812

RECEIVED

AUG 6 2004

PRO SE OFFICE

## EMERGENCY APPLICATION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C. § 2241

EFTHIMIOU, ACHILLES, (hereinafter "Petitioner"), proceeding Pro se pursuant to **Haines v. Kerner**, 404 U.S. 652 (1972), in which the Supreme Court held allegation of a Pro se complaint to less stringent standards than formal pleadings drafted by lawyers. See also **Spencer v. Doe**, 139 F.3d 107 (2nd. Cir. 1998), and respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to **28 U.S.C. § 2241**. Petitioner challenges his unlawful order of removal and his unlawful detention pursuant to **INA § 236(c); 8 U.S.C. § 1226(c)**. In support thereof, Petitioner asserts as follows:

### I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2241, and the original Constitution Writ of habeas Corpus pursuant to Article I, Section 9, Clause 2.

This Court has the authority to grant a writ when the Petitioner's custody is in violation of Constitution, Laws or Treaties of the United States. See **ZADVYDAS V. DAVIS**, 121 S.Ct. 2491 (2001); see also **INS V. St. CYR.**, 533 U.S. 289 (2001) (concluding that jurisdiction under § 2241 was not repealed by ADEPA or IIRIRA).

Relief is authorized by 28 U.S.C. § 1336 (Mandamus), 28 U.S.C. § 1651 (All Writs Act) and 28 U.S.C. §§ 2201, et seq. (Declaratory Judgement Act).

Petitioner submits that the Attorney General John Ashcroft is a proper Respondent in his petition. Attorney General under whose jurisdiction the Bureau of Immigration and Customs Enforcement ("BICE") falls, is deemed the "custodian" and jurisdiction in the Eastern District is proper, as jurisdiction over the Attorney General would be proper under New York longarm jurisdiction. **HENDERSON V. INS, 157 F.3d 106, 124 n. 19 (2nd. Cir. 1998).**

There are trifecta of cases from this Court that directly address the issue of personal jurisdiction in this context. See e.g. **PENA-ROSARIO V. RENO**, 83 F.Supp.2d 349 (E.D.N.Y. 1997); **MOJICA V. RENO**, 970 F.Supp. 130 (E.D.N.Y.1997); **NWANKWO V. RENO**, 828 F.Supp. 171 (E.D.N.Y. 1993); see also **YESIL V. RENO**, 958 F.Supp. 828 (S.D. N.Y. 1997).

Petitioner further contends that the Government could forum shop in cases like this one, as the BICE has complete discretion to transfer detainees among facilities.

Therefore, Petitioner submits that this Honorable Court should find the Attorney General as the proper Respondent, and that personal jurisdiction in the Eastern District of New York exists.

## II.   VENUE

Because the habeas statue contains no venue provisions, see **28 U.S.C. § 2241,** the Supreme Court has held that traditional venue considerations apply. See **BRADEN V. 30th JUDICIAL CIRCUIT COURT OF KENTUCKY, 410 U.S. 484 at 493-94 (1973).**

Traditional venue considerations include:

(1) where all the material events took place;
(2) where records and witnesses pertinent to the claim are likely to be found;
(3) the convention of the forum for the respondent and petitioer; and
(4) the familiarity of the court with the applicable law.

**HENDERSON, 157 F.3d at 128 n. 25.**

In the instant case, the record will provide that at all times, Petitioner has resided within the Eastern District of New York. Petitioner, and his family still reside in the Eastern District of New York. Upon release, Petitioner intends to return to New York and reunite with his family.

Although Petitioner was convicted in a different State, Petitioner has always been a resident of the Eastern District of New York. [ See Exhibit B ]

As with the Petitioner, detainees are often relocated in rural areas, far away from evidence and their attorneys which "could prove fatal to the feasibility of representation. See **ARMENTERO V. INS, 340 F.3d 1058 (9th. Cir. 2003).** Moreover, district courts where immigration centers are located, such as the District Court for the Western District of Louisiana, in which Petitioner's detention center is located, are flooded with detainees' habeas petitions which creates a delay for the adjudication of the Petitioner's habeas petition. However, the Eastern District of New York is equally as convenient for the Respondents as the Western District of Louisiana, and there is no indication that Respondents would be prejudiced by a transfer of venue to New York.

Therefore, this Honorable Court's jurisdiction is invoked under 28 U.S.C. § 2241, and venue is proper in the Eastern District of New York.

### III. EXHAUSTION OF REMEDIES

Petitioner, has exhausted his administrative remedies to the extent required by law, and his only remedy available is by way of this Judicial action. Moreover, Petitioner raises serious Constitutional issues that the Board of Immigration Appeals and Immigration Judge have no authority to decide.

### IV. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, EFTHIMIOU, ACHILLES, was born on August 23, 1951 in Chrisovisa, Greece. He is 52 years old. He originally entered the United States in 1968 as a seaman at New York, New York. On September 16, 1975, petitioner adjusted his status to lawful permanent resident through his United States citizen wife. He has been in the United States for 36 years, and a lawful permanent resident for 29 years.

The Petitioner had married a United States citizen in 1972, they have two children who are now 26 and 30 years old. The Petitioner has one other child from another relationship who is 11 years old. His family in the United States consists of his two brothers, three nephews, one niece and three grandchildren. They are all United States citizens.

Since his arival in the United States in 1968, the Petitioner has lived in the New York City area at:

> 361 Old Country Road
> Hicksville, NY 11801

-4-

Before coming to the United States in 1968, the Petitioner com-
pleted six years of schooling in Greece. Once he arived in the Uni-
ted States in 1968, he commenced a long work history. Because most
of his work experience is as a painter, the Petitioner has moved
from painting contractor to painting contractor as work has become
available. All Petitioner's Employment were in Queens, NY [See
Exhibit B]

On very a few occasions, Petitioner conducted business in the
State of Messachusetts, but most of his employment was in New York.
The Petitioner was arrested on August 18, 1986 and charged in the
superior court, Middlesex County, Massachusetts with rape. Petitio-
ner was falsely accused of the alleged rape and the accusation was
set up by his ex employer who hired Mary Williams to file false
charge against the Petitioner ,[See petitioner's affidavit in Exhibit E]

Petitioner was represented by law office of Nicholas Macaronis,
located at 9 Central Street; Lowell, Massachusetts 01852. Tel. No.
617 453 3252. [See Exhibit A]

During the proceeding of the Pre Trial discovery and based on
the lack of evidence against the Petitioner, Petitioner's attorney
and the commonwealth District attorney's office engaged in plea
negotiations. The district attorney's office offered to allow the
Petitioner to plea guilty to a misdemeanor with only a probationary
sentence, [See petitioner's affidavit in Exhibit E].

Petitioner considered the offer and the Immigration consequenc-
es of pleading guilty versus going to trial. On or about January 5,
1987, Petitioner's counsel advised him based on the lack of evidence
that he could be found not guilty and also advised him even if he
was convicted in trial, he will recieve very lite sentence in prison

-5-

no more than one year. [see Exhibit A]

Petitioner belived and relied on even if he were convicted of a
felony after trial, he still would not be subject to deportation or
at the very least still eligible for relief 212(c) based on the law
in effect at that time.

Petitioner turned down the plea agreement and went to trial re-
lying on not only relief from removal but no possible removal as an
aggravated felony based on the law in effect at that time. [see
Exhibit  A]

On March 13, 1987, Petitioner was convicted wrongfuly by Jury
Trial and was sentenced to 10 years with  recommendation to be con-
sidered for release after 1 year made by the sentencing Judge and
as he was advised by his counsel when he was making a decision bet-
ween a plea agreement or jury trial.

Once the Petitioner arrived to prison he was classified into a
work release program for ten months and was released from prison in
March 1988. He served a total of one year and was paroled, he fini-
shed his parole in New York State in 1997.

Petitioner was picked up at his home in Hicksvill, New York by
DHS/BICE on December 30, 2003 after he has been out of prison for
over 15 years and off parole for over six years.

Petitioner was brought to Oakdale, Louisiana by DHS/BICE forcing
removal based on his conviction of rape in violation of Chapter 265,
Section 22(b) of the Massachusetts Penal Law. Petitioner was charged
with removability pursuant to Section 237(a)(A)(iii), an aggravated
felony as defined in Section 101(a)(43)(F) of the Act, a law relating
to a crime of violence.

On or about Jan 28, 2004, the DHS/BICE  dged additional charge against the Petitioner, also based on his only conviction of rape, pursuant to 237(a)(2)(A)(iii), an aggravated felony as defined in § 101(a)(43)(A) of the Act, to wit: murder, rape, or sexual abuse of a minor.

On February 18, 2004, Petitioner requested to be released on bond as mandatory detention pursuant to 236(c) is inapplicable to him, because he completed his criminal sentence before October 8, 1998.

The Immigration Judge denied the Petitioner's request for release on bond finding the Petitioner's only conviction in 1987 makes him threat to the society and a flight risk.

Timely appeal was taken to the Board of Immigration Appeals but was never decided by the Board.

On February 19, 2004, the Immigration Judge ordered the Petitioner to be removed to Greece as an alien who is not eligible for § 212(c) relief [see Exhibit C].

Timely appeal was taken to the Board of Immigration Appeals but was dismissed without opinion [see Exhibit D].

There are on going proceedings in the superior court of the commonwealth of Massachusetts, County of Middlesex related to over turn the Petitioner's only conviction based on false accusation, Petitioner is represented by counsel at this time his name is: George Garfikle. His phone number is: ( 617)734 - 4904.

## V.   ARGUMENT

Petitioner can show that he is in custody in violation of the states Constitution and the laws. Upon review of the decision of the immigration Judge and the BIA, it is clear that both seriously misapplied the Immigration laws to such an extent that Petitioner

was denied due process of law.

There is no doubt that as a lawful permanent resident of the United States for 29 years, Petitioner was entitled to both substantive and procedural due process of law as guaranted under the United States Constitution. **Reno v. Flores**, 507 U.S. 292, 306, 123 L. **Ed.2d 1, 113 S.Ct. 1439 (1993).** Under such protection,Petitioner must be protected from governmental action that "shocks the conscience" or interfers with his rights "implicit in the concept of ordered liberty" **Palk v. Connecticut**, 302 U.S. 319, 325-326, 82 L.Ed. **288, 58 S.Ct. 149 (1937),** Petitioner must also be protected from governmental action that is not implemented in a fair manner. **Mathews v. Eldridge** 424 U.S. 319, 335, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976).

An alien who is a lawful Permanent resident of and is physically present in the United States is entitled to the protection of the due process clause. See **Landon v. Plasencia**, 459 U.S. 21, 32 **(1982)** ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his Constitutional status changes accordingly"); **Zadvydas v. Davis**, 533 U.S.678 **(2001)** ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. ) (quoting **Shaughnessy v. United States ex rel. Mezei**, 345 U.S. 206, **212 (1953).** Petitioner is therefore a person within the protection of the Fifth Amendment and may not be deprived of life, liberty or property without the due process of law.

As such, Petitioner is entitled to have the immigration laws correctly and consitutionally applied as to his particular situation.

-8-

The BIA and the immigration Judge seriously misapplied the 1996 law to the Petitioner's conviction is 1987, absent clear statement from the congress that the statute should applied retroactive, the circumstances of the Petitioner's conviction reveals that he went to trial relying on the eligibility for relief from removal pursuant to 212(c) and the law in effect at the time he went to trial in 1987.

In this case, the BIA and the immigration Judge violated Petitioner's Constitutional rights to due process by seriously misconstruing the Immigration laws and the facts of the case to their determinations on Petitioner's eligibility for relief pursuant to 212(c). Such action amounted to a fundamental miscarriage of Justice and a manifest injustice which violates Petitioner's due process rights.

Also, the Immigration Judge denied the Petitioner's rights to due process of law by refusing to release the Petitioner on bond pending his removal proceedings. Mandatory detention should not be applied to the Petitioner who was released from criminal custody in 1988 prior to October 8, 1998.

The Immigration Judge's finding that the Petitioner is a threat to the community and flight risk is not supported by cogent reasons. Such action by the IJ resulted in more than just an abuse of discretion, it amounted to a manifest injustice.

**(A) THE GOVERNMENT'S APPLICATION OF THE 1996 IMMIGRATION LAW AMENDMENTS BARRING ELIGIBILITY FOR 212(C) RELIEF FROM REMOVAL TO AN INDIVIDUAL WHOSE REMOVABLE CONVICTION OBTAINED BY JURY TRIAL WHERE THE CONVICTION OCCURED PRIOR TO NOVEMBER 18, 1988, PRECEDED ENACTMENT OF THE AMENDMENTS IS IMPERMISSIBLY RETROACTIVE.**

The term "aggravated felony" entered the Immigration law lexicon with the enactment of the ADAA on November 18, 1988, [The Anti-

Drug Abuse Act of 1988]. ADDAA § 7342 created a new provision, INA § 101(a)(43), 8 U.S.C. § 1101(a)(43)(1988), that defined "aggravated felony" to include murder, any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2), any illicit trafficking in firearms or destructive devices as defined in 18 U.S.C. § 921, or any attempt or conspiracy to commit such acts. See 102 Stat. 4469-70. In addition, ADAA § 73 44(a) created an aggravated felony deportation ground at INA § 241(a)(4)(B), 8 U.S.C. § 1251(a)(4)(B)(1988). ADAA § 7344(b) provided that the ground applied "to an alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony". 102 stat. 4471 (1988). In other words, pursuant to the ADAA, an alien was subject under INA § 241(a)(4)(B) to deportation as an aggravated felony only if convicted after November 1, 1988.

In 1990, Congress enacted IMMACT. See 104 Stat. 4978. The House-Senate Conference comittee Report declared that IMMACT:

> Provide[d] for a comprehensive revision of all the
> existing grounds for exclusion and deportation,
> including the repeal of outmoded grounds, the
> expansion of waivers for certain grounds, the
> substantial revision of security and foreign
> policy grounds, and the consolidation of related
> grounds in order to make the law more rational and
> easy to understand.

H.R. Conf. Rep. No. 101-955 at 128 (1990) (emphasis added), reprinted in 1990 U.S.C.C.A.N. 6784, 6793 IMMACT § 501(a) broadened INA § 101(a)(43)'s definition of "aggravated felony" see 104 Stat. 5048 (1990), and IMMACT § 602, entitled "Revision of grounds for deportation", restructed INA § 241's deportation ground scheme by consolidation similar deportable offenses. See, e.g. IMMACT § 602(a)(2)(A)(general crimes including aggravated felony);§602(a)(2)(B) (controlled substances);   see also   § 602(a)

(2)(c) (firearm offenses); See also 104 Stat. 5077-80 (1990). As part of this consolidation, the aggravated felony deportation ground formerly set forth in INA § 241(a)(4)(B) by the ADAA was redesignated by IMMACT § 602(a) as INA § 241(a)(2)(A)(iii). See 104 Stat. 50 77, 5080 (1990). The redesignation did not change the text of the ground, which stated:

> any alien who is convicted of an aggravated
> felony at any time after entery is deportable.

See INA § 241(a)(2)(A)(iii), 8 U.S.C. § 12 51(a)(2)(A)(iii) (1990).

In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act came into the Immigration law, Pub. L. No. 104-208, Div. C, Title III-B, 110 Stat 3009-546 (Sept. 30, 1996) ("IIRIRA") amended definition of "AF "   to include, among other things, "rape and sexual abuse of a minor". See IIRIRA § 321(a), 110 Stat. 3009-627-28 (1996). The terms of the expanded definition apply retroactively. See IIRIRA § 321(b), 110 Stat. 3009-628 (1996). In addition, IIRIRA § 305(a)(2) redesignated INA § 241 as INA § 237, See 110 Stat. 3009-597-98; accordingly, the aggravated felony deportation ground previously set forth at INA § 241(a)(2)(A)(iii) is now found at INA § 237(a)(2)(A)(iii). See 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996).

For decades prior to the immigration law amendments of 1996, lawful permanent resident immigrant charged with comitting a crime had statutory right to seek a waiver of any resulting change of excludiability or deportability under section 212(c) of the Immigration and Nationality Act (INA), provided the Immigrant had been lawfully domiciled in the United States for seven years. See former INA 212(c), 8 U.S.C. 1182(c) (1994), as added by Immigration and Nationality Act of 1952; See also **Francis v. INS, 532 F.2d 268 (2d**

**Cir. 1976)** (holding that 212(c) relief is available in deportation
as well as exclusion proceedings); **Matter of Silva, 16 I & N Dec.
26 (BIa 1976)** (adopting and applying Francis holding nationwide).
The 212(c) waiver was unavailable only for so-called "aggravated
felonies" for which the individual had served five or more years in
prison. See former INA 212(c), 8 U.S.C. 1182(c) (1994).

In 1996, congress amended the Immigration and Nationality law
twice. First, in section 440(d) of the Antiterrorism and Effective
Death Penalty Act (AEDPA), Congress barred 212(c) waivers for seve-
ral categories of criminal offenses. Pub. L. No. 104-132, 110 Stat.
12 14 (1996). Subsequently, in section 304(b) of the Illegal Immig-
ration Reform and Immigrants responsibility Act (IIRIRA), Congress
repealed section 212(c) and replaced it with a form of relief call-
ed cancellation of removal that is barred for individuals convicted
of any aggravated felony, regardless of time served. Pub. L. 104-
208, 110 Stat. 3009.

In this present case, the government seeks to apply AEDPA Sect-
ion 440(d) and IIRIRA Section 304(b) to deny the statutory right to
seek 212(c) relief even to a long term lawful permanent resident
charged with having convicted by a Jury trial and served 1 year in
prison prior to the effective dates of these laws and prior to ADAA
effective date, (November 18, 1988).

In this present case, the Petitioner was charged on August 6,
1986 with crime of rape in violation of chapter 265, Section 22(b)
of the Massachusetts Penal Law. During the proceedings of the pre
trial discovery and based on the lack of evidence against the Peti-
tioner. Petitioner, Petitioner's attorney and the commonwealth Dis-
trict attorney's office engaged in plea negotiations. The district

-12-

attorney's office offered to allow the Petitioner to plea guilty to a misdemeanor with only a probationary sentence. Petitioner considered the offer and the Immigration consequences of pleading guilty versus to trial. On or about January 5, 1987, Petitioner's counsel advised him that if he even was convicted in trial, he will receive very light sentence in prison between 10 to 12 month and he will be eligible for relief from deportation based on the former 212(c) and the Immigration law in effect at that time [see Exhibit **E** - Petitioner's affidavit]. Accordingly, Petitioner belived that even if he were convicted of a felony after trial, he would still not subject to deportation or still eligible for relief 212(c) at the very least.

Petitioner, turned down a plea agreement of misdemeanor and went to trial on March 13, 1987. Petitioner went to trial in reliance on the advice of his counsel that even if he were found guilty, he would recive a lite sentence in prison and very likely not be removed from U.S.A. based on law in effect at that time. petitioner went trial relying on not only relief from removal but no possible removal as an aggravated felony based on the law in effect at that time.

Wrongfuly, Petitioner was convicted on March 13, 1987 and was sentence to 10 years with recommendation to be consider for release after 1 year made by the sentencing Judge petitioner was relesed from prison on March 13, 1988, and was placed on porole.

In deciding not to accept the plea bargain offered but instead to go to trial, Petitioner conformed his conduct to the settled expectation that he will receive a lite sentence and no harsh Immigration consequences based on the Immigration law in effect at that

-13-

time he made his decision to go to trial.

Petitioner demonstrated clear and reasonable actual reliance on the former statutory scheme in making the decision to go to tiral, there is a fortiori an impermissible retroactive effect.

It is clear that the elimination of any possiblity of former § 212(c) relief by IIRIRA has an abvious and severe retroactive effect on persons like petitioner who relied on settled expectations of the Immigration laws in place at the time he turned down a plea bargain and decided to go to trial. Because Petitioner had lived continuously in the U.S. for seven years and had been sentenced to less than five years imprisonment, he would have been eligible for § 212 (c) relief had it not been eliminated.

In St. Cyr, The court applied the principles of landgraf in considering whether IIRIRA'S repeal of discretionary relief under former § 212(c) would have a retroactive effect if applied to an alien who was "convicted pursuant to a plea agreement at a time when his plea would not have rendered him ineligible for § 212(c) relief" St. Cyr, 533 U.S. at 320. The court first examined whether the provisions repealing former § 212(c) evinced a clear congressional intent to apply the repeal retroactively. Concluding that there was no such clear statement, see **St. Cyr, 533 U.S. at 314-20,** the court next considered whether applying the repeal retroactively would be Impermissible. The Court concluded that applying the repeal to aliens "who entered into plea agreements with the expectation that they would be eligible for § 212(c) relief, would attach a new disability in respect to transactions or consideration already past" and produce a retroactive effect. Id. at 321 (quoting landgraf, 511 U.S. at 269. The court ultimately held something somewhat more

-14-

expansive: "we .... hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreement and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.'" Id. at 326.

In reaching this conclusion, the Court focused on an alien's reasonable reliance on the possibility of discretionary relief under former § 212(c) as one of the most important factors prompting him to forego trial and enter a plea agreement. "given the frequency with which § 212(c) relief was granted in the years landing up to .... IIRIRA" The Court reasoned, "Preserving, the possibility of such relief would have been one of the principle benfits sought by defendants deciding whether to enter into a plea agreement are actuely aware of the Immigration consequences of their convictions." Id. at 322.

In support of its conclusion that aliens who accepted plea agreement prior to IIRIRA had a reliance enterest in § 212(c) relief, the court pointed to the quid pro quo at the heart of criminal plea agreements. Id. at 321. "In exchange for some perceived benefit, defendants waive several of their Constitutional rights ... and grant the government numerous tangible benfits." Id. at 322 ( internal quotation marks omitted). The Court concluded that "because [St. Cyr], and other aliens like him, almost certainly relied upon the likelihood of receiving descretionary relief in deciding whether to forgo their right to a trial, the elimination of any possibllity of 212(c) relief by IIRIRA has an abvious and severe retroactive effect. Id. at 325.

Alternatively, the Immigrant choosing to go to trial may have examined the Immigration effects of a possible conviction had no

-15-

Immigration consequences whatsoever. This may have been a catalyst for a decision to forego a guilty plea, as there was no need to worry about negotiating a plea for the goal of preserving Immigration status.

In this present case, the Petitioner did not roll the dice, Petitioner's some what unique situation still demands that he be considered for § 212(c) relief based on the Supreme Court's rulings in the recent years where the Supreme Court has considered whether a statute has an Impermissible retroactive effect on four separate occasions and concluded in each that the challenged statutes had an impermissible retroactive effect. **St. Cyr, supra; Hadix, 527 U.S. at 357-60; hughes Aircraft, 520 U.s. at 947-52; Landgraf, 511 U.S. at 280-86.** The Court has used different formulations in describing whether a statute has an impermissible retroactive effect, including whether the statute "gives a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed." **Landgraf 511 U.S. at 280.** Other formulations include: "increases a party's liability for past conduct." "Sweeps away settled expectations suddenly and without individualized consideration." id. and "changes the legal consequences of acts completed before [the new law's] effective date," id. at 269 n.23.

The Petitioner should not be deported under aggravated felony ground where the conviction was not an aggravated felony at the time of the conviction. See **United States v. Ubaldre-Figueroa, 347 F.3d. 718 (9th. Cir. 2003)** (reversing noncitizen defendants conviction for illegal reentry after removal after finding that prior removal order was invalid as defendant had "plausible" claim that congress' retroactive application of IRRIRA § 321 [expanding

categories of offenses failling within AF ground] violated due process).

In St. Cyr., the Court found it sufficient that the plea agreements of deportable aliens were "likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief." 533 U.S. at 323 (emphasis added). And indeed the Court's holding is not limited to those aliens who actually relied on the availability of § 212(c) relief: "We ... hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, not withstanding those convictions, would have been eligible for § 212(c) relief at the time of thier plea under the law then in effect." **St. Cyr, 533 U.S. at 326.**

The holding in St. Cyr then is simply not subject to a qualification that the alien seeking the opportunity to pursue § 212(c) relief must have accepted a plea agreement that necessarily preserved his eligibility for § 212(c) relief (i.e. a plea agreement that provided for reliese from incarceration in less than five years' time).

Certainly, this significant because it further confirms that Landgraf's limitations on the repeal of former § 212(c) are construed broadly in favor of those who had even a partial or contingent reliance interest in the existing state of law for example, an alien who accepted a plea agreement with a six-year term of imprisonment that, through good behavior credits and the like, could be shortened to less than five years' time. Indeed St. Cyr himself accepted a plea that provided for a ten-year sentence, with execution suspended after five years, see **St. Cyr, 533 U.S. 289 (No. 00-767), 2001 WL 210189.** If he had actually served the full five years

unsuspended portion of his sentence, St. Cyr. would have been
ineligible for discretionary relief under § 212(c). See INA § 212
(c) (depriving the attorney general of the power to withhold depo-
rtation for "an alien who .... has served .... a term of imprison-
ment of at lease 5 years" for certain crimes. Thus, even St. Cyr
himself did not accept a plea that guaranted him eligiblity for §
212(c) relief.

The question presented to this Honorable Court whether the
repeal of § 212(c) relief is impermissibly retroactive with respe-
ct to aliens who elected to go to trial (or some relevant subset
thereof). In another way, the question is what aliens if any who
went to trial and were convicted did so in reasonable reliance on
the availability of § 212(c) relief.

The Petitioner is among this group, Petitioner's somewhat uni-
que situation still demands that he be cosidered for § 212(c) rel-
ief. There can be no doubt that Petitioner conformed his conduct
to match his settled expectations of Immigration consequences, but
turned down the plea because "even if he were convicted of a felo-
ny after trial he would still be eligible for hardship relief from
deportation pursuant to § 212(c)." As noted in St. Cyr, the Supre-
me Court found that all aliens who accepted plea agreements had
some reliance interest in the potential availability of § 212(c)
relief. The Court concentrated its discussion on the alien's dici-
sion whether to accept the plea agreement. This focus is logical
because the reliance interest of an alien who accepts a plea agreement
arises at the time the choice is made to accept the agreement Generally

-18-

speaking, reliance interests (in the legal sense) arise because
some choice is made evincing reliance. Cf. Restatement (second) of
contracts § 90 (1981) (requiring "action or forbearance" to invoke
promissory estoppel).

Accordingly, this Honorable Court should focus on the choice
made by aliens who went to trial and were convicted prior to the
effective date of IIRIRA'S repeal of former § 212(c).

If it was reasonable in St. Cyr for an alien to rely on the
attenuated availability of § 212(c) relief in accepting a plea agr-
eement, Petitioner see no reason why it would be unreasonable for
the same alien to likewise rely in declining a plea agreement. The
reasonable reliance question turns on the nature of the statutory
right and the availability of some choice affecting that right, not
on the particular choice actually made. In sum, because aliens such
as petitioner who affirmatively turned down plea agreements had a
reliance interest in the potential availability of §212(c) relief,
this Honorable Court should find that IIRIRA's repeal of §212(c) is
impermissible retroactive with respect to such aliens while Petiti-
oner may have "rolled the dice" in terms of guilty or innocence at
trial, he did not do so with respect to immigration consequences in
view of his reasonable expectation that there would be no adverse
immigration consequences of going to trial. In fact, there are sev-
eral circumstances where an individual may have acted prior to the
new statute in reliance on the possibility of avoiding deportation
afforded by prior law. other examples of circumstances where lawful
permanent resident immigrants may have relied on the possibility of
avoiding deportation offorded by prior law. other than where an
individual pled guilty prior to the new laws...including the following:

-19-

(a) lawful permanent resident immigrant rejected a plea and pursued acquittal in reliance on the possibility of relief from deportation even if found guilty after trial.

(b) lawful permanent resident immigrant did not reject plea but agreed to cooperate with law enforcement authorities, with plea delayed until completion of cooperation resulting in plea being entered after enactment of new laws.

(c) Lawful permanent resident immigrant pursued motion to suppress, discovery motion, or other pre-trial motion, with plea delayed until such preliminary proceedings completed resulting in plea being entered after enactment of new laws.

(d) lawful permanent resident immigrant did not reject plea, but plea hearing was not scheduled until after enactment of new laws for reasons beyond the control of the individual.

These are all examples of situations where individuals may have relied on well settled expectations that deportation might be avoided. Just like those who pled guilty prior to enactment of new laws, some persons effected by new laws may be capable of showing reliance; other may not. The fact that one is unable to document reliance, however, does not mean that there was no reliance or settled expectations.

What the Supreme Court's retroactivity decision recognize in both the civil and criminal contexts, is that people have a right to know the possible legal consequences of their actions at the time of their conduct, whether or not they will later be able to demonstrate actual individual reliance on that knowledge.

Thus, whether or not a long-time lawful permanent resident like Petitioner is able to demonstrate actual reliance on the availability

of relief from deportation at the time, he choosed to go to trial, such reliance on prior law is presumed. As U.S. District Judge John Gleeson has stated:

> Individuals are presumed to act against a backdrop of legal obligations. If they were not, there would be little problem with the retrospective application of many laws; there are likely to be few instances of an individual poring over a statute book before acting. "Whether or not the operative conduct might have been different, the immigrant has a presumptive right to the imposition of only those consequences which could have attached at the time he commited his act."

**Pena-Rosario v. Reno**, 2000 WL 150710 (E.D.N.Y.) (quoting **Maria v. McElroy**, 68 F.Supp.2d 206, 229 (E.D.N.Y. 1999)).

Here , the government's application fo AEDPA section 440(d) and IIRIRA section 304(b) to lawful permanent resident convicted by Jury Trial and recieved a lite sentence after rejecting the plea agreement, prior to the new law, unquestionably eliminates a legal right...eligibility for 212(c) relief from deportation based on conviction not only prior to IIRIRA by it was prior to ADAA of 1988. Under prior law, long-time lawful permanent residents with criminal convictions faced possible, but not certain, deportation due to eligibility to seek 212(c) relief. However, if AEDPA section 440(d) and IIRIRA section 304(b) are applied to them, their statutory right to seek 212(c) relief is taken away and deportation becomes vertually inevitable. Thus, for such lawful permanent resident, the government's position changes a mere possibility of deportation into a certainty of deportation. Based on the Supreme Court's retroactivity Jurisprudence, in the absence of a clear statement of retroactive legislative intent, such retroactive effect is presumptively impermissible.

For the foregoing reasons, Petitioner respectfully urge that this Honorable court should find that the government's application of AEDPA Section 440(d) and IIRIRA Section 304(b) to Petitioner has retroactive effect and is therefore, impermissible under the traditional presumption against retroactivity of a new civil statute.

## (B) APPLYING MANDATORY DETENTION TO THE PETITIONER IS PROHIBITED AS A MATTER OF LAW

The attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in Section 212(a)(2) [criminal and related grounds] or Section 212(a)(3)(B) [Terrorist activities]; or is deportable by reason having committed any offense covered in Section 237(a)(2)(A)(ii) [multiple criminal convictions], (A)( ii) [aggravated felony], (B) [Controlled substance convictions], (c) [certain firearm convictions],(D) [ miscellaneous crimes ], or Section 237(a)(4)(B) [Security and related grounds]; or is deportable under Section 237(a)(2)(A)(i) [crime of moral turpitude] on the bases for an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year. INA Section 236(c)(1); 8 C.F.R. § 236.1(c). The alien shall be taken into custody when he or she is released without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. Id.

The Board of Immigration Appeals (BIA) held that an alien who completed his criminal sentence, on or before October 8, 1998 based on a conviction which constitutes a removable offense, is eligible for consideration of bond under the general bond provisions of INA Section 236(a)(1). See **Matter of Adeniji, Int. Dec. #3417 (BIA 1999).**

-22-

The determination of whether an alien should be detained or required to post a bond is a two step process:

(1)  Does he poses a danger to the persons or property in his community.

(2)  Is he a flight risk unlikely to appear  for further proceedings. 8 C.F.R. § 236.1(c)(8).

Until the alien satisfies these two factors, there is a presumption for detention. In determining whether the alien has successfully rebutted the presumption, such factors as seriousness of the crime committed, prior criminal history, sentences imposed and time served, nonappearance at Court proceedings, probation history, evidence of rehabilitative effort or recidivism shall be considered. In this present case, the Immigration Judge was clearly in error in considering the Petitioner a threat to persons or property and a poor bond risk. As to whether or not the Petitioner is a threat to persons or property, he has been in the United States for 35 years. He has only one conviction of rape in 1987, he was sentenced to serve 1 year in prison, ten months of that time in a work release program. He completed his parol term in 1997 with no violation. He has no other arrest since 1986. Clearly, the Petitioner has demonstrated that he is rehabilitated and not a threat to harm person or property. He has been steadily employed for years, completed his parole term successfuly. Also, the Petitioner is not a flight risk. "Government detention violates the due process clause unless the detention is ordered in special and narrow non-punitive circumstances... where a special Justification .... outweights his Constitutionally protected interest in avoiding physical restraint." See **Zadvydas, 533 U.S. 678**. When the basis for detaining an individual is the individual's dangerousness, it is the government's burden to prove

-23-

that the individual pases "an unusual and well-defined to the public."

In this present, the government failed to prove that the Petitioner should be subject to mandatory detention. Accordingly, this honorable Court should ordered the Petitioner be released on reasonable amount of bond.

## VI.   **RELIEF SOUGHT**

Wherefore, the premises considered, Petitioner respectfully request:

(1)   Assume Jurisdiction over this matter;

(2)   Issue an order declaring that the Petitioner is statutory eligible for 212(c);

(3)   Issue an order declaring that the government's application of 1996 Immigration law Amendments is impermissibly retroactive as applied to the Petitioner's particular situation, and vacate order of removal;

(4)   Issue an order directing the respondents to release the Petitioner on bond pending adjudication of this habeas petition;

(5)   Grant any other relief this Honorable Court deems just and proper in the interest of Justice.

**I affirm, under penalty of perjury that the foregoing is true and correct.**

Dated: _8/ 3/2004_

Respectfully submitted: _Achille Efthimiou_

EFTHIMIOU, ACHILLES
BOP # 21323-265
A# 34-298-812
Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463-5010

-24-

# EXHIBIT A

# Commonwealth of Massachusetts

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CRIMINAL ACTIO

No. 86-2737-{

C O M M O N W E A L T H

VS.

ACHILLES EFTHIMIOU _____, Defendant

N O T I C E   O F   A P P E A R A N C E

TO THE CLERK OF THE ABOVE NAMED COURT:

Please enter my appearance as attorney for defendant - XXXXXXXXXXXX

ACHILLES EFTHIMIOU _____

in the above entitled case.

Dated: _____ October 29, _____ 19 86.

LAW OFFICES OF NICHOLAS MACARONIS

By: _____
    Steven H. Bowen
Attorney for  Defendant

Address  9 Central Street _____

Lowell, Massachusetts 01852

Tel. No. (617) 453-3252 _____

1986 Oct 30

Filed in Court

MIDDLESEX, ss.  **Commonwealth of Massachusetts**

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this _____ of _____ 200U

_____
Assistant Clerk

#3

# Commonwealth of Massachusetts

MIDDLESEX, TO WIT:

At the SUPERIOR COURT, begun and holden

at the CITY OF CAMBRIDGE,        within and for the County of Middlesex,
Tuesday after the
on the /First    Monday of     September      in the year of our

Lord one thousand nine hundred and eighty -six

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present, That

Achelles Eftheneou

on the     Eighteenth       day of      August

in the year of our Lord one thousand nine hundred and eighty -six

at     Ayer               , in the County of Middlesex aforesaid.

did have sexual intercourse or unnatural sexual intercourse with Mary Williams, and did compel said Mary Williams to submit by force and against her will to said intercourse, or did compel said Mary Williams to submit by threat of bodily injury, to said intercourse.

Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

A true bill.

_Catherine Keely Mohan_
Foreman of the Grand Jury

_District Attorney._

D. A. -001

86-2737

MIDDLESEX, ss.
**Commonwealth of Massachusetts**
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT
In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set my hand and affix the seal of said Superior Court this ___ of Jan, 2000
___ Clerk



Ch. 265 S22(b)
Rape

**COMMONWEALTH**

vs.

Achelles Eftheneou

SUPERIOR COURT September sitting, 1986

9/7th day - Returned by the Grand Jury and filed in Court.

1986 Oct 1    Defdt. arraigned

and severally pleads not guilty.

Continued until October ____ to (post bail)

OCT 7 1986

Commonwealth moves for sentence

# EXHIBIT B

**Prevent identity theft—protect your Social Security number**

# Your Social Security Statement

**Prepared especially for Achilles Efthimiou**

May 24, 2001

S1391
ACHILLES EFTHIMIOU
361 OLD COUNTRY RD
HICKSVILLE NY 11801

*See inside for your*
*personal information* ➝

## ▼ What Social Security Means to You

We're sending you this *Social Security Statement* to help you understand what Social Security means to you and your family. We hope you'll use it in planning your financial future. Each year, about three months before your birthday, we'll send you a new *Statement* showing your updated earnings record and your potential benefits.

Be sure to read this *Statement* carefully. If you think there may be a mistake, please let us know. That's important because your benefits will be based on our record of your lifetime earnings. Remember, the future's in your hands when you read your *Social Security Statement*.

**Social Security is for people of all ages ...**
It can help you whether you're young or old, male or female, single or with a family. It's there for you when you retire, but it's more than a retirement program. Social Security can provide benefits if you become disabled and support your family when you die.

**Work to build a secure future ...**
Social Security is the largest source of income for most elderly Americans and plays a major role in keeping them out of poverty. But Social Security can't do it all. Social Security was not intended to be the sole source of income when you retire. You'll also need a pension, savings or investments. Think of Social Security as a foundation on which to build your financial future.

**About Social Security's future ...**
Will Social Security be there when you retire? Of course it will. But changes will be needed to meet the demands of the times. We're living longer and healthier lives, 79 million "baby boomers" are approaching retirement, and in about 30 years, there will be nearly twice as many older Americans as there are today.

Social Security now takes in more in taxes than it pays out in benefits. The excess funds are credited to Social Security's trust funds, which are expected to grow to over $4 trillion before we need to use them to pay benefits. In 2016, we'll begin paying more in benefits than we collect in taxes. By 2038, the trust funds will be exhausted and the payroll taxes collected will be enough to pay only about 73 percent of benefits owed. We'll need to resolve long-range financial issues to make sure Social Security will provide a foundation of protection for future generations as it has done in the past.

**Social Security On The Net ...**
Be sure to visit *www.ssa.gov* on the Internet to use the *Benefit Planners* to help you plan your financial future; calculate customized estimates of your future benefits; apply for retirement benefits; subscribe to *eNews* for up-to-date news about Social Security programs and benefits; and correct or change your name on your Social Security card or get a replacement card by requesting a form SS-5. We will continue to add online services to make it as easy and convenient as possible for you to do business with us.

Larry G. Massanari
Acting Commissioner of Social Security

## What's inside ...

▼ Your Estimated Benefits . . . . . . . . . . . . . . . . . 2
▼ Your Earnings Record . . . . . . . . . . . . . . . . . . 3
▼ Some Facts About Social Security . . . . . . . . . . 4
▼ If You Need More Information . . . . . . . . . . . . 4
▼ To Request This Statement In Spanish . . . . . . 4
  *(Para Solicitar Una Declaración en Español)*

el



052401E 20S 269

*(16)*

# ▼ Help Us Keep Your Earnings Record Accurate

You, your employer and Social Security share responsibility for the accuracy of your earnings record. Since you began working, we recorded your reported earnings under your name and Social Security number. We have updated your record each time your employer (or you, if you're self-employed) reported your earnings. Remember, it's your earnings, not the amount of taxes you paid or the number of credits you've earned, that determine your benefit amount. When we figure that amount, we base it on your average earnings over your lifetime. If our records are wrong, you may not receive all the benefits to which you are entitled.

▼ **Review this chart carefully** using your own records to make sure our information is correct and that we've recorded each year you worked. You're the only person who can look at the earnings chart and know whether it is complete.

Some or all of your earnings from **last year** may not be shown on your *Statement*. It could be that we were still processing last year's earnings reports when your *Statement* was prepared. Your complete earnings for last year will be shown on next year's *Statement*. **Note:** If you worked for more than one employer during any year, or if you had both earnings and self-employment income, we combined your earnings for the year.

▼ **There's a limit on the amount of earnings on which you pay Social Security taxes each year.** The limit increases yearly. Only the maximum taxable amount will appear on your earnings chart. (For Medicare taxes, the maximum earnings amount began rising in 1991. Since 1994, **all** of your earnings are taxed for Medicare.)

▼ **Call us right away** at 1-800-772-1213 (7 a.m. — 7 p.m.) if any earnings for years **before last year** are shown incorrectly. If possible, have your W-2 or tax return for those years handy. (If you live outside the U.S., follow the directions at the bottom of Page 4.)

## Your Earnings Record at a Glance

| Years You Worked | Your Taxed Social Security Earnings | Your Taxed Medicare Earnings | Years You Worked | Your Taxed Social Security Earnings | Your Taxed Medicare Earnings |
|---|---|---|---|---|---|
| 1970 | $ 1,515 | $ 1,515 | 1990 | $ 8,216 | $ 8,216 |
| 1971 | 0 | 0 | 1991 | 7,384 | 7,384 |
| 1972 | 0 | 0 | 1992 | 20,926 | 20,926 |
| 1973 | 1,595 | 1,595 | 1993 | 8,500 | 8,500 |
| 1974 | 157 | 157 | 1994 | 2,884 | 2,884 |
| 1975 | 4,320 | 4,320 | 1995 | 0 | 0 |
| 1976 | 875 | 875 | 1996 | 4,424 | 4,424 |
| 1977 | 0 | 0 | 1997 | 0 | 0 |
| 1978 | 3,600 | 3,600 | 1998 | 0 | 0 |
| 1979 | 420 | 420 | 1999 | 0 | 0 |
|  |  |  | 2000 | 680 | 680 |
| 1980 | 2,205 | 2,205 |  |  |  |
| 1981 | 2,178 | 2,178 |  |  |  |
| 1982 | 5,216 | 5,216 |  |  |  |
| 1983 | 0 | 0 |  |  |  |
| 1984 | 900 | 900 |  |  |  |
| 1985 | 2,284 | 2,284 |  |  |  |
| 1986 | 5,052 | 5,052 |  |  |  |
| 1987 | 2,482 | 2,482 |  |  |  |
| 1988 | 2,384 | 2,384 |  |  |  |
| 1989 | 16,227 | 16,227 |  |  |  |

### Totals over your working career:

Estimated taxes for Social Security:
You paid:                 $6,131
Your employers paid:      $6,131

Estimated taxes paid for Medicare:
You paid:                 $1,412
Your employers paid:      $1,412

**Note: If you are self-employed, you pay the total tax on your net earnings.**

052401E 20S 26938

# ▼ Some Facts About Social Security

## About Social Security and Medicare ...

Social Security pays retirement, disability, family and survivors benefits. Medicare, a separate program run by the Health Care Financing Administration, helps pay for inpatient hospital care, nursing care, doctors' fees and other medical services and supplies to people over 65 or to people who have received Social Security disability benefits for two years. Your Social Security covered earnings qualify you for both programs.

*Here are some facts about Social Security's benefits:*

▼ **Retirement** — If you were born before 1938, your full retirement age is 65. Because of a 1983 change in the law, the full retirement age will increase gradually to 67 for people born in 1960 or later.

Some people retire before their full retirement age. They can retire as early as age 62 and take their benefits at a reduced rate. Others continue working after their full retirement age. They receive higher benefits because of additional earnings and special credits for delayed retirement.

▼ **Disability** — If you become disabled before full retirement age, you can receive disability benefits after six months if you have:

— enough work credits before becoming disabled; and

— a physical or mental impairment that's expected to prevent you from doing "substantial" work for a year or more *or* result in death.

▼ **Family** — If you're eligible for disability or retirement benefits, your current or divorced spouse, minor children or adult children disabled before age 22 also may receive benefits. Each may qualify for up to 50 percent of your benefit amount. The total amount depends on how many family members qualify.

▼ **Survivors** — When you die, certain members of your family may be eligible for benefits:

— your spouse age 60 or older (50 or older if disabled, or any age if caring for your children under age 16); and

— your children if unmarried and under age 18, still in school and under age 19 or adult children disabled before age 22.

If you are divorced, your ex-spouse could be eligible for a widow's or widower's benefit on your record when you die.

## Receive benefits and still work ...

You can continue to work and get retirement or survivors benefits. If you're under your full retirement age, there are limits on how much you can earn without losing some or all of your benefits. The limits change each year. When you apply for benefits, we'll tell you what the limits are at that time and whether work would affect your monthly benefits. When you reach full retirement age, the earnings limits no longer apply.

## Before you decide to retire ...

Think about your benefits for the long term. Everyone's situation is different. For example, be sure to consider the advantages and disadvantages of early retirement. If you choose to receive benefits before you reach full retirement age, your benefits will be permanently reduced. However, you'll receive benefits for a longer period of time.

To help you decide when is the best time for you to retire, we offer a free booklet, *Social Security — Retirement Benefits* (Publication No. 05-10035), that provides specific information about retirement.

There are other free publications that you may find helpful, including:

▼ *Basic Facts* (No. 05-10080) — basic facts about Social Security and how to get more information;

▼ *Understanding The Benefits* (No. 05-10024) — a general explanation of all Social Security benefits;

▼ *How Your Retirement Benefit Is Figured* (No. 05-10070) — an explanation of how you can calculate your benefit;

▼ *A Pension From Work Not Covered By Social Security* (No. 05-10045) — how it affects your retirement or disability benefits;

▼ *Government Pension Offset* (No. 05-10007) — explanation of a law that affects spouse's or widow(er)'s benefits; and

▼ *When Someone Misuses Your Number* (No. 05-10064) — what to do if you're a victim of identity theft.

We also have leaflets and factsheets with information about specific topics such as military service, self-employment or foreign employment. You can get our publications at *www.ssa.gov* or by calling us at 1-800-772-1213.

---

**If you need more information or want to request this *Statement* in Spanish (*Para solicitar Su Declaración en español*)...**

Visit www.ssa.gov/mystatement, call us at 800–772–1213 or write to Social Security Administration, Office of Earnings Operations, P.O. Box 33026, Baltimore, MD 21290–3026. If you're deaf or hard of hearing, call TTY 1–800–325–0778. If your address is incorrect on this *Statement*, ask the IRS to send you Form 8822. We don't keep your address if you're not receiving Social Security Benefits.

Form SSA-7005-SM-SI(1-2001)

# Your Estimated Benefits

To qualify for benefits, you earn "credits" through your work — up to four each year. This year, for example, you earn one credit for each $830 of wages or self-employment income. When you've earned $3,320, you've earned your four credits for the year. Most people need 40 credits, earned over their working lifetime, to receive retirement benefits. For disability and survivors benefits, young people need fewer credits to be eligible.

We checked your records to see whether you have earned enough credits to qualify for benefits. If you haven't earned enough yet to qualify for any type of benefits, we can't give you an estimate now. If you continue to work, we'll give you an estimate when you do qualify.

**What we assumed** — If you have enough work credits, we estimated your benefit amounts using your average earnings over your working lifetime. For 2001 and your earnings up to retirement, we assumed you'll continue to work and make about the same in future years as you did in 1999 and 2000. We also included credits we assumed you earned last year and this year.

We can't provide your actual benefit amount until you apply for benefits. **And that amount may differ from the estimates stated below because —**

(1) Your earnings may increase or decrease over the years.

(2) Your benefit figures shown here are only estimates based on current law. The laws governing benefit amounts may change because, by 2038, the payroll taxes collected will be enough to pay only about 73 percent of benefits owed.

(3) Factors, such as **a pension for work not covered by Social Security, some military service or credit for railroad employment**, may affect your benefit amount.

Generally, estimates for older workers are more accurate than those for younger workers because they're based on a longer earnings history with fewer uncertainties, such as earnings fluctuations and future law changes.

These estimates are in today's dollars. As you receive benefits, they will be adjusted for cost-of-living increases.

**▼ Retirement**   You have earned enough credits to qualify for benefits. At your current earnings rate, if you stop working...

At age 62, your payment would be about . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   308  a month
If you continue working until. . .
    your full retirement age (66 years), your payment would be about . . . . . . . . . $   409  a month
    age 70, your payment would be about . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   540  a month
*Note:* When you continue working beyond your retirement age, your benefit may increase because of your additional earnings. If you delay receiving benefits until age 70, your benefit will increase because of the special credits you'll receive for delaying retirement. This increased benefit could be important to you later in life. It also could increase the future benefit amounts your family and survivors could receive.

**▼ Disability**   To get benefits if you become disabled right now, you need 28 credits of work, and 20 of these credits had to be earned in the last 10 years. Your record shows you do not have enough credits in the right time period.

**▼ Family**   If you get retirement or disability benefits, your spouse and children may also qualify for benefits.

**▼ Survivors**   You have earned enough credits for your family to receive the following benefits if you die this year.

Total family benefits cannot be more than . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   806  a month
Your child . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   403  a month
Your spouse who is caring for your child . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   403  a month
Your spouse who reaches full retirement age . . . . . . . . . . . . . . . . . . . . . . . . . . . $   537  a month

Your spouse or minor child may be eligible for a special one–time death benefit of $255.

**▼ Medicare**   You have earned enough credits to qualify for Medicare at age 65. Even if you do not retire at age 65, be sure to contact Social Security three months before your 65th birthday to enroll in Medicare.

## We based your benefit estimates on these facts:

Your name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Achilles Efthimiou
Your date of birth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . August 23, 1951
Your estimated taxable earnings per year after 2001 . . . . . . . . . . . . . .   $680
Your Social Security number . . . . . . . . . . . . . . . . . . . . . . 107–46–8049

5) Places of Employment

| FROM | TO | EMPLOYER | ADDRESS | POSITION |
|------|-----|----------|---------|----------|
| 12/03 | Present | Incarcerated by BICE | | |
| 1994 | 2003 | John Karlathakis & Son | Queens, NY | Painter |
| 1994 | 2003 | Pete's Painting | Queens, NY | Painter |
| 1994 | 2003 | John Kubiares/John Koroverzos | Queens, NY | Painter |
| 1994 | 2003 | Self-employed | Hicksville, NY Windham, NY | Painter |
| 1993 | 1994 | Self-employed | New Ipswich, NY | Painter |
| 1992 | 1993 | Terry Pappadakis | Ayers, MA | Painter |
| 1988 | 1992 | Pete Patous Construction | Ayers, MA | Painting foreman |
| 1987 | 1988 | Incarcerated in Massachusetts | | |
| 1986 | 1987 | Pete Patous Construction | Ayers, MA | Painting foreman |
| 1985 | 1986 | Nikolis Painting | Queens, NY | Painter |

| 1980 | 1986 | John Kubiares/John Koroverzos | Queens, NY | Painter |
|---|---|---|---|---|
| 1978 | 1980 | Rainbow Painting & Contractors | Queens, NY | Painter |
| 1978 | 1980 | European Painting | Queens, NY | Painter |
| 1976 | 1978 | George Gijikarlikas | Westboro, VA | Painter |
| 1972 | 1986 | John Kalathakis & Son | Queens, NY | Painter |
| 1972 | 1986 | Pete's Painting | Queens, NY | Painter |
| 1972 | 1986 | Self-employed | Queens, NY Windham, NY | Painter/roofer/carpenter |
| 1969 | 1976 | Bernard Achman Painting Company | Valley Stream, Long Island, NY | Painter |
| 1968 | 1969 | Gus Painters | Jamaica Queens, NY | Painter |
| 1968 | 1968 | Peres Milo Restaurant | Queens, NY | Diswasher |

6) Immediate Family

| NAME | RELATIONSHIP | DATE OF BIRTH PLACE OF BIRTH | CITIZEN OF | ADDRESS |
|---|---|---|---|---|
| Zoe Efthimiou | Daughter | USA 1974 | USA | Jamaica, NY |
| Jerry Efthimiou | Son | USA 1978 | USA | Hicksville, NY |
| Jer Efthimiou | Son | USA 1993 | USA | Levitown, NY |
| Kathy Agalakes | Ex-wife | USA | USA | Hicksville, NY |
| Jimmy Efthimiou | Brother | Greece | USA | Valley Stream, NY |
| Freddie Efthimiou | Brother | Greece | USA | Massachusettes |

# NOTICE OF SETTLEMENT

TO:         Registrant

FROM:     New York State Division of Criminal Justice Services (DCJS)

This notice concerns the settlement of a lawsuit filed by The Legal Aid Society on behalf of all persons who were convicted of sex offenses and required to register under the Sex Offender Registration Act (SORA) (Correction Law §§168 et seq.). In that case, Doe v. Pataki, 3 F.Supp.2d 456 (SDNY 1998), a federal court, Judge Denny Chin, ruled that registered sex offenders ("registrants") had been assigned risk levels without receiving proper due process of law. Due process means a fair hearing, which a person must receive before being given a risk level and subjected to community notification.

Judge Chin issued an injunction in the case. The injunction has largely prevented community notification for registrants on probation or parole on January 21, 1996 or who were incarcerated on January 21, 1996 and assigned risk levels before January 1, 2000. It has remained in effect until the present. The injunction will soon be lifted on a case-by-case basis for those designated risk level 2 or level 3, after each registrant has had an opportunity for a hearing in his or her case.

If you had originally been designated a risk level 3 or a risk level 2, you will receive a notice from the Office of Court Administration (OCA) in the coming months with information about the hearing process. The OCA notices will be sent first to level 3 registrants. Notices to level 2 registrants, particularly in counties with large populations, will probably not be sent for at least several months, until hearings have been scheduled for the level 3 registrants.

The hearing will be held in the county in which you were originally convicted and sentenced or a court designated by OCA. You have the right to counsel at that hearing. If you cannot afford an attorney, an attorney will be appointed to represent you. You will have the right

Page 2

to testify, present evidence, and challenge the State's evidence.

The notice from OCA will contain a date for your initial appearance in court to challenge your risk level. This date is not the date of the hearing itself. Instead, on the initial appearance date, an attorney will be assigned, if necessary, and the judge will set the date for the hearing, which will occur approximately 60 days later. After the hearing, the judge will decide what risk level to assign: level 3 (high risk of reoffense), level 2 (moderate risk of reoffense), or level 1 (low risk of reoffense).

The OCA notice will describe the different registration obligations and community notification provisions applicable to particular risk levels. This information will enable a registrant to make an informed choice about whether to challenge the original assigned risk level.

Because the lowest risk level is level 1, there is no need for hearings in that category. Accordingly, if your original risk level was level 1, no OCA notice will be sent to you. Your risk level will be entered into the registry administered by DCJS thirty (30) days after the mailing of this Notice. You must continue to verify your address annually with DCJS and comply with other registration requirements until the completion of the required 10-year period that commenced with the date of your first registration. While you remain registered, your name and risk level may also be given to callers to an "800" number maintained by DCJS.

The exact terms of the settlement of the case are contained in a Stipulation signed by The Legal Aid Society and the Attorney General. It is available in the court file of the Southern District of New York. The case number of Doe v. Pataki is 96 Civ. 1657 (DC). The Stipulation will also be available on the DCJS website at www.criminaljustice.state.ny.us thirty (30) days after it is approved by Judge Chin.

If you have questions about the hearing process, you may call The Legal Aid Society at 1-866-353-2491 between 9:30 am and 5:30 pm from Monday to Friday.



*Page 3*

State of New York
DIVISION OF CRIMINAL JUSTICE SERVICES
4 Tower Place
Albany, NY 12203-3764

ACHELLES  EFFTHENEON
361 W.OLD COUNTRY RD
HICKSVILLE, NY 11801

ACHILLES EFTHIMIOU
NOW NEW ADDRESS 08/30/04
P.O.BOX 7410
HICKSVILLE NY 11802-7410

1150144107 36

Page 4

# EXHIBIT C

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Oakdale, Louisiana


File A 34 298 812                        February 19, 2004


In the Matter of


ACHILLES EFTHIMIOU,              )          IN REMOVAL PROCEEDINGS
                                 )
            Respondent           )


CHARGE:      Section 237(a)(2)(A)(iii) of the Immigration and
             Nationality Act - as an alien convicted of an
             aggravated felony as defined in Section
             101(a)(43(F) and 101(a)(43)(A).


APPLICATION:  A waiver under Section 212(c) of the Act.


ON BEHALF OF RESPONDENT:          ON BEHALF OF DHS:

Leo Jerome Lahey, Esquire         Craig Harlow, Esquire
Post Office Box 51778             Assistant Chief Counsel
Lafayette, Louisiana 70505        1010 East Whatley Road
                                  Oakdale, Louisiana 71463


### DECISION OF THE IMMIGRATION JUDGE

#### I.  FACTUAL AND PROCEDURAL HISTORY

          The respondent is a native and citizen of Greece who
was admitted into the United States at New York, New York on or
about September 16, 1975 as a lawful permanent resident.  He was
convicted of the crime of rape in violation of Chapter 265,
Section 22(b) of the Massachusetts Penal Law on or about March
13, 1987.

bpl

These proceedings commenced after issuance of a Notice to Appear dated September 30, 2003. Respondent appeared in initial master calendar proceedings January 13, 2004. The matter was reset to January 28 to allow respondent time to look for an attorney.

On January 28, respondent appeared in court with his counsel of record, who had filed not only a notice of appearance but also a motion for continuance for preparation. The Department of Homeland Security had no objection to the continuance. The matter was reset to the date requested by counsel, February 19, 2004.

Respondent appeared in court on that date with counsel, who acknowledged receipt of the Notice to Appear, as well as an I-261 which contained an additional allegation against the respondent. The respondent, through counsel, waived an explanation of the nature and purpose of the proceedings as well as the respondent's rights in the proceedings. He acknowledged receipt of both the Notice to Appear as well as the I-261. The respondent, through his counsel, waived the reading of both documents and admitted factual allegations 1, 2, and 3, but denied allegations 4 and 5 as well as the charges of deportability.

The Government offered into evidence a copy of a judgment from the court in Massachusetts, showing that the respondent was convicted on March 13, 1987 for the offense of

bpl

rape and was sentenced to 10 years in prison.  The Court found on
that date that the respondent was deportable on both charges.
The Court finds, based upon the conviction record, that
deportability has been established by evidence which is clear and
convincing.

The respondent designated Greece as the country for
removal if removal were to become necessary.  As relief from
removal, respondent requested a waiver under Section 212(c) of
the Act.

## II.   APPLICABLE LAWS

The Immigration Act did provide for a waiver under
Section 212(c) of the Act for aliens who had been admitted as
lawful permanent residents for at least seven years.  However,
the law was later changed to provide that aliens would be
statutorily ineligible for such relief if they had been convicted
of several aggravated felonies and had served a term of
imprisonment of at least five years pursuant to such felonies.
See previously 8 C.F.R. Section 212.3(f)(4) (1994).  The waiver
under Section 212(c) of the Act was ultimately abolished by
passage of the Illegal Immigration Reform and Immigrant
Responsibility Act, September 30, 1996.  However, after much
litigation, the United States Supreme Court, in INS v. St. Cyr,
provided that the waiver under 212(c) might be available to
aliens whose offenses occurred prior to April 24, 1996 when the
Anti-Terrorism and Effective Death Penalty Act became effective.

A 34 298 812                    3              February 19, 2004

bpl

However, this waiver would be only available to aliens who had pled guilty to the offenses prior to the April 24, 1996 date. The rationale of the Supreme Court is that the aliens pled guilty to their offenses in anticipation of seeking relief in Immigration proceedings under Section 212(c).

### III.  ANALYSIS

The Government opposed the request for a waiver under Section 212(c) of the Act. They moved to pretermit the application for lack of statutory eligibility. The Government pointed out that while the respondent's conviction occurred prior to April 24, 1996, the respondent was found guilty at a jury trial.  Therefore, the Service argued, and the Court agrees, that the Supreme Court's ruling in INS v. St. Cyr does not apply to the respondent.  Respondent's counsel could offer no argument that the law had been expanded to include aliens who had been found guilty, rather than pled guilty to criminal offenses prior to April 24, 1996.  Therefore, the Court finds that the respondent, having been found guilty of rape and sentenced to 10 years, would be statutorily ineligible for the waiver under Section 212(c) of the Act.  As that is the only relief requested, the following order is hereby entered.

### ORDER

IT IS HEREBY ORDERED that the request for a waiver under Section 212(c) of the Act be denied for lack of statutory eligibility;

A 34 298 812                    4                    February 19, 2004

bpl

        IT IS FURTHER ORDERED that the respondent be removed from the United States to Greece based upon the charge contained in the Notice to Appear and the I-261.


                                        _____
                                        AGNELIS L. REESE
                                        United States Immigration Judge

# EXHIBIT D



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

EFTHIMIOU, ACHILLES
INMATE #: 21323-265  A#34-298-812
INMATE HOUSING:
FDC, P.O. BOX 5010
OAKDALE, LA 71463-0000

INS-Litigation Unit/OAK
P.O. Box 1128
Oakdale, LA 71463-1128

Name: EFTHIMIOU, ACHILLES

A34-298-812

Date of this notice: 06/29/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*[signature]*

Frank Krider
'ing Chief Clerk

Enclosure

Panel Members:
    OSUNA, JUAN P.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

**Falls Church, Virginia 22041**

File:    A34-298-812 - OAKDALE

Date:    JUN 2 9 2004

In re:  EFTHIMIOU, ACHILLES

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

ON BEHALF OF DHS:  Glenda M. Raborn, Assistant Chief Counsel

ORDER:

　　PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 1003.1(e)(4).

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　FOR THE BOARD

# EXHIBIT E

IN UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

## AFFIDAVIT

STATE OF LOUISIANA

CITY OF OAKDALE

SOCIAL SECURITY NO.: 107 46 8049

I, **EFTHIMIOU ACHILLES,** of full age,hereby certify and say:

[1] On August 18,1986 I was charged with rape in the state of Massachusetts while I was on working trip.

[2] The charge was based on false accusation by a woman ,named Mary Williams who was hired by one of my Ex employer named, Pete Patous to file false charge against me ,because I opened my own business.

[3] I did not commit the alleged rape, there was no evidence against me.

[4] During the proceedings in the superior court of Massachusetts, I was represented by law office of Nicholas Macaronis located at 9 Central Street----Lowell, Massachusetts------01852,Tel.No. (617) 453-3252 .

[5] I was offered to plea guilty to a misdemeanor with only probationary Sentence by the Commonwealth District attorney's office on or about January 5,1987.

[6] I considered the plea offer and the Immigration Consequences of pleading guilty versus going to trial and prove my innocence.

[7] I discussed the plea agreement with my attorney who advised me even if I get convicted in trial ,I will receive very lite Sentence in prison and still I would not be subject to deportation, based on the eligibility for relief ;  INA 212(c),based on the law in effect at that time,1987.

-1-

[8] I turned down the plea agreement and went to trial relying on not only relief from removal pursuant to 212(c),but also I was relying on no possible deportation as an aggravated felony based on the law in effect at that time.

[9] On March 13,1987 I was convicted by jury trial,rongfuly and I was sentence to 10 years in prison with recommendation to be released after 1 year ,as I was advised by my attorney.

[10] On March 13,1988,I was released from prison after 1 year which I spent 10 months of it at work release program.

[11] When I went to trial I was relying on no certain deportation based on the law in effect at that time.

[12] I was picked up by the DHS/BICE on December 30,2003 from my house at: 361 old county Road,Hicksvill,N.y. 11801.

[13] There are on going investigation regarding the false accusation and the unjustfied conviction of rape, the investigations by attorney;George Garfikle,    Tel.No. (617) 734-4904 who was hired by me to over turn the conviction.

**I, Certify the foregoing statements made by me are true.I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.**

APPLICANT: *Achille Stoe*

**EFTHIMIOU    ACHILLES**
**# 21323-265**

**SWORN TO AND SUBSCRIBED BEFORE ME**

_29th_ day of _July_ ,2004

NOTARY    PUBLIC